## Alpheus Harding *vs.* Amos Larned.

The guardian of a spendthrift will be held responsible for all losses which arise in conse quence of his disregard of the terms of his license to sell the real estate of his ward, both in respect to the manner of making the sale and the disposition of the proceeds; and his ward's assent to his proceedings will not exonerate him from his responsibility.

If the guardian of a spendthrift, in acting under a license to sell real estate of his ward which is subject to a mortgage, with directions that the proceeds be put at interest and secured by mortgage on other real estate or otherwise well and safely invested, makes a

sale of the equity of redemption and also of hay which is treated as a portion of the real estate and returned by him as such, and for a portion of the purchase money takes security upon the equity of redemption which he has sold, and, the purchase money not being paid, is obliged to take the same back and to expend money thereon in making repairs, and the mortgage is subsequently foreclosed, he cannot be allowed in his account either for that portion of the price of the real estate or hay which he has failed to collect, or for the sums expended for repairs. And the fact that the mortgagee is still willing that he should redeem the real estate from the mortgage is immaterial.

The guardian of a spendthrift will be held responsible for all losses which arise in consequence of investments by him which appear to have been made without the exercise of reasonable care and prudence on his part. And it is not reasonable care and prudence to take notes for $400, payable at intervals of from one to three years, signed by two persons, each of whom is reputed to be good for $500; or to take a note for $240 signed by four persons, one of whom is reputed to be rich, if the others do not appear to have any property.

APPEAL by the guardian of a spendthrift from the decree of the judge of probate, disallowing certain items of his account. The case came up upon the report of an auditor, and it was agreed that the facts found therein might be taken as true. The auditor found, in reference to the securities taken by the guardian, which are referred to in the opinion, that the guardian had reasonable cause to believe that the notes of Sinclair were secured by the mortgage which he took for that purpose upon the equity of redemption of the farm ; that Sinclair represented himself and was reputed to be worth some four or five hundred dollars, and the guardian had reasonable cause to believe that the notes signed by Sinclair and Conant were good and would be paid at maturity ; that Morse, at the time when the note signed by him and others was taken, was reputed to be very wealthy, and his note was considered abundantly good, and the guardian had reasonable cause to believe that the note taken by him was good, but soon after that time Morse became involved in difficulties which caused him to leave for parts unknown.

The other material facts are sufficiently stated in the opinion. The case was reserved by *Dewey,* J. for the determination of the whole court.

*G. T. Davis,* for the appellant. The guardian had a right to sell on credit. A contrary rule would cause great sacrifice in the sale of trust estates. Security taken in part on the estate sold is safe and usual. *Fay* v. *Taylor,* 11 Met. 531, 534. *Harvard*

*College* v. *Amory*, 9 Pick. 461. *Lovell* v. *Minot*, 20 Pick. 116. *Smith* v. *Bean*, 8 N. H. 15. The order of the court was substantially complied with by taking security in part on the real estate sold, and in part in notes believed to be good.

*D. Aiken*, for the appellee.

CHAPMAN, J. The guardian of a spendthrift has, at most, an authority over the estate of his ward not coupled with an interest; and in making sale of his real estate under a license from a judge of probate, he executes a rere power. The license prescribes the mode of execution; and as this class of powers is created by law, in derogation of the right of the citizen to manage his own property, and to secure it from being wasted, on the ground that he is himself an unsuitable person to manage it, the reason for enforcing the rule that powers must be strictly executed is peculiarly strong in such cases. Guardians should be held liable for all losses that arise in consequence of their disregard of the terms of their license to sell, both in respect to the manner of making sale and the disposition of the proceeds.

In this case the license to sell was granted upon the petition of the guardian, representing that there was a debt of $976 due from the ward, which was secured by mortgage upon a part of the real estate, and other debts amounting to $250; that it was for the interest of the ward that the whole should be sold; and that, after paying the debts, the balance should be invested for his benefit. The license was granted on the 25th of April 1854. As to the proceeds of the sale, it directs that they be " put at interest, and secured by mortgage on other real estate, or otherwise well and safely invested for the benefit of said ward." As the license does not direct the payment of debts out of the proceeds, it would seem to authorize the sale of the land subject to the mortgage. But in such case, as the mortgage would remain upon the land, it would not be safe to invest the proceeds upon the equity as security; and probably this is the reason why the license requires the security to be by mortgage of " other real estate," if a mortgage is taken as security. The guardian has disregarded this direction; and instead of paying the

mortgage debt, as he proposed in his petition to do, he sold the land subject to the mortgage, and took security for a part of the purchase money on the equity of redemption. The result was that he was obliged to take the land, and that the mortgagee, Alpheus Harding, Jr., has foreclosed his mortgage. And thus, after the guardian has expended considerable sums of money in repairs, &c., he has lost the whole land. It is immaterial that the mortgagee is willing that he shall still redeem. He has lost the legal right to do so. The ward himself could hardly have managed the property more disastrously; and as the disasters have happened in consequence of the guardian's error in the investment of the proceeds of the sale, in a manner not authorized by the license, he must bear the loss. None of his charges for loss on the real estate, or for money expended upon it subsequently to the sale, can be allowed. The money must be treated as if it had remained in his own hands, and must be accounted for accordingly. The assent of the ward to his proceedings can have no legal validity, since the ward had no legal competency to act in the matter. The very purpose of the guardianship is to take away such competency.

The hay which was sold with the farm, and as a part of it, and returned by the guardian as such, must be accounted for according to the return of the guardian.

Another portion of the proceeds of the sale has been invested as follows: The land was sold to John K. Tenney on the 26th of May 1854, for the sum of $2700, which included $200 as the price of the hay above mentioned. On the 21st of the following November, Tenney sold it to Samuel S. Sinclair. The guardian had not delivered the deed till that time. He took the notes of Sinclair for $1257, secured by a mortgage of the land sold, and also three notes of Sinclair. One was for $200, payable on the 1st of the following October; and two for $100 each, payable in April 1856 and April 1857. These notes were also signed by John Conant as surety. Conant was a stranger to the guardian, who made inquiries about him, and was informed that he paid his debts punctually, and was considered good for four or five hundred dollars. He had reasonable cause

to believe that this was true. But considering that Sinclair had been obliged to run in debt for the whole purchase money, and that these notes had a considerable time to run, and the chances of death, sickness and accident to which this single surety was subject, it cannot be regarded as an act of reasonable prudence in a guardian to invest $400 on such security. Even in the execution of private trusts, a power of sale, or of varying trust securities, though to a certain extent discretionary, must not be exercised in an arbitrary or mischievous manner, but only for the benefit of the trust estate ; and the court will enter into the circumstances, and decide upon the propriety or impropriety of exercising such powers. Hill on Trustees, 471 *& seq.* Much more should the court examine into the circumstances, and require the exercise of care and prudence on the part of a guardian, in whose hands the law has placed the property of a ward which is taken from him by compulsion, to prevent waste and mismanagement.

The note received of William T. Morse, on which $241.26 proved to be due, was signed by two sureties, and payable to and indorsed by Tenney ; but it does not appear that either of the parties besides Morse ever had any property or was reputed to have any. When execution was obtained, it was found they had none. So far as is shown, then, the investment was really upon the security of Morse alone. We cannot regard this as an exercise of reasonable prudence. On the whole, we think the decree of the judge of probate should be affirmed.